Penguin USA

AGREEMENT made this 24th day of October 1994, by and between:

Elaine Steinbeck and Thomas Steinbeck
c/o McIntosh & Otis Inc. (Attention: Eugene Winick)
310 Madison Avenue
New York, New York 10017

jointly and severally referred to as the Author and/or Proprietor, party of the first part (the "Author"), and VIKING PENGUIN, A DIVISION OF PENGUIN BOOKS USA INC., 375 Hudson Street, New York, New York 10014, party of the second part (the "Publisher"), respecting:

eighteen books by John Steinbeck:
Work #1    THE MOON IS DOWN
Work #2    THE MOON IS DOWN (play)
Work #3    BOMBS AWAY
Work #4    CANNERY ROW
Work #5    THE PEARL
Work #6    THE WAYWARD BUS
Work #7    A RUSSIAN JOURNAL
Work #8    BURNING BRIGHT
Work #9    EAST OF EDEN
Work #10   SWEET THURSDAY
Work #11   THE SHORT REIGN OF PIPPIN IV
Work #12   ONCE THERE WAS A WAR
Work #13   THE WINTER OF OUR DISCONTENT
Work #14   TRAVELS WITH CHARLEY
Work #15   AMERICA AND AMERICANS
Work #16   LOG FROM THE SEA OF CORTEZ (with Edward F. Ricketts)
Work #17   THE SHORT NOVELS OF JOHN STEINBECK (to the extent of
               THE MOON IS DOWN, CANNERY ROW, THE PEARL)
Work #18   THE PORTABLE STEINBECK (to the extent of "About Ed
               Ricketts", CANNERY ROW, EAST OF EDEN, TRAVELS
               WITH CHARLEY, IN SEARCH OF AMERICA, Two Uncollected
               Stories, The Language of Awareness)

(each book being separately referred to as the "Work"), whereas Publisher has published the above listed books under existing contracts  and whereas for an additional consideration the parties have agreed to enter into a new agreement for continued publication of the above listed books, it is mutually agreed between the Author and the Publisher with respect to each Work as follows:

VPI  -  II   McIntosh & Otis Inc.   7/86 & 7/11   117840.000

EXHIBIT
13

129

PART ONE

*Publication*
*ghts*

      1. The Author hereby grants and assigns to the Publisher for the remaining term of copyright, and such renewals or extensions thereof as may now or hereafter exist, the sole and exclusive right to publish the Work in volume form in the English language throughout the <u>United States, its territories and dependencies, the Philippines and Canada; such rights shall be non-exclusive in the rest of the world outside the British Commonwealth of Nations (excluding Canada).</u>

      The Author also grants to the Publisher such further rights as are specified hereinafter. The phrase "in volume form" shall be defined as meaning publication of the Work as a whole, or substantially complete, as a unit or at one time.

*Delivery of*
*Manuscript*

      2.   DELETED

*Permissions,*
*Clearances*

      3.   DELETED

*Proof*
*Corrections*

      4.   DELETED

*Agreement to*
*Publish*

      5.   DELETED

*Copyright*

      6. The Publisher shall carry the original copyright registration and the copyright renewal notices in each edition of the Work.

      The Author, or the Publisher on the Author's behalf and at its option, shall apply for renewals (if applicable to the Work) whenever they fall due. Both parties agree to execute, at any time, all such papers and documents as may be advisable, in the Publisher's opinion, in order to protect, assign, record, renew, or otherwise effectuate the rights herein, whether granted to the Publisher or reserved by the Author.

*Advance*

      7. The Publisher shall pay to the Author, as a guaranteed advance against and on account of all moneys accruing to him under this agreement, yearly payments in the following amounts, such payments to be made in two equal installments on or before April 30 and October 31 of each year. The first payment will be made in October, 1994 or on signing of this agreement, whichever is later.

      Year number 1  $214,500.
      Year number 2  $214,500.
      Year number 3  $189,750.
      Year number 4  $189,750.
      Year number 5  $189,750.

*130*

Year number 6 $165,000.
Year number 7 and thereafter* $165,000.

*Beginning in the seventh year and each year thereafter, it is understood and agreed that the $165,000. payment will be adjusted annually by the Publisher based on an increase in the National Consumer Price Index (the US city average for all urban consumers) or its successor equivalent, with a cap of 10 percent on any such annual adjustment.

The guaranteed advance shall also be adjusted annually so that if, in any year, the earnings payable to the Author exceed the guaranteed advance for that year ("excess earnings"), the amount of the guaranteed advance for the following year only shall be restated by adding a sum equal to the excess earnings from the preceding year to the guaranteed advance. The annual guaranteed advance shall not be adjusted downward for any shortfall by operation of this paragraph.

If at any time the Publisher determines that payment of the annual guarantee is not economically feasible for Publisher to continue, the Publisher and Author agree to negotiate in good faith as to a reduced annual guarantee. If no agreement can be reached this agreement will terminate upon Publisher's written notice to the Author subject to Publisher's right to sell off existing inventory of the Work for a period of 18 months from the date of such termination.

All royalty payments due on account of copyright renewals signed by John Steinbeck IV are included in and shall be apportioned from this payment.

*Royalties:*
*Regular Sales*

8. Except as set forth in Clause 20, the Publisher agrees to pay the Author a royalty on the invoiced retail price of every copy sold by the Publisher, less copies returned (except as set forth below):

## HARDCOVER EDITION

15 percent

## TRADE PAPERBOUND EDITION

10 percent for the following titles -
CANNERY ROW
    (whether sold separately on in 2-in-1
    volume with OF MICE AND MEN; although OF MICE
    AND MEN is covered by a separate agreement,
    a single royalty shall apply to the
    invoiced retail price of the 2-in-1 volume)
THE PEARL
    (whether sold separately or in 2-in-1
    volume with THE RED PONY; although THE RED PONY is
    covered by a separate agreement, a single
    royalty shall apply to the invoiced retail
    price of the 2-in-1 volume)
EAST OF EDEN

8 percent for the following titles -
SWEET THURSDAY
TRAVELS WITH CHARLEY
THE WINTER OF OUR DISCONTENT
THE MOON IS DOWN

131

THE WAYWARD BUS
LOG FROM THE SEA OF CORTEZ

7 percent for the following titles -
BURNING BRIGHT
THE SHORT REIGN OF PIPPIN IV
ONCE THERE WAS A WAR
THE MOON IS DOWN (Play)
RUSSIAN JOURNAL
BOMBS AWAY
AMERICA AND AMERICANS
THE SHORT NOVELS OF JOHN STEINBECK
THE PORTABLE STEINBECK

## MASS MARKET PAPERBOUND EDITION

15 percent for the following titles -
CANNERY ROW
    (whether sold separately or in 2-in-1
    volume with OF MICE AND MEN; although OF MICE
    AND MEN is covered by a separate agreement, a
    single royalty shall apply to the invoiced
    retail price of the 2-in-1 volume)
THE PEARL
    (whether sold separately or in 2-in-1
    volume with THE RED PONY; although THE RED PONY
    is covered by a separate agreement, a single
    royalty shall apply to the invoiced retail price
    of the 2-in-1 volume)
EAST OF EDEN

10 percent for the following titles -
SWEET THURSDAY
TRAVELS WITH CHARLEY
THE WINTER OF DISCONTENT
THE MOON IS DOWN
THE WAYWARD BUS
LOG FROM THE SEA OF CORTEZ

8 percent for the following titles -
BURNING BRIGHT
THE SHORT REIGN OF PIPPIN IV
ONCE THERE WAS A WAR
THE MOON IS DOWN (Play)
RUSSIAN JOURNAL
BOMBS AWAY
AMERICA AND AMERICANS
THE SHORT NOVELS OF JOHN STEINBECK
THE PORTABLE STEINBECK

Copies covered by any of the following subdivisions of this Clause 8 shall not
be included in such computation.

*of Sheets*

(a) On sales of sheets to prebinders: a royalty of ten percent of the net
amount that the Publisher receives;

*Mail order*
*Premium*

(b) On copies sold direct to the consumer through the medium of mail-order coupon advertising or direct-by-mail circularization and on premium sales: a royalty of five percent (5%) of the net amount that the Publisher receives;

*Export/Canadian*
*Sales*

(c) On copies sold in Canada, or for export, whether in bound copies or in sheets, a royalty of ten percent (10%) of the net amount Publisher receives.

*Sales at*
*High Discounts*

(d) On copies sold at discounts of more than fifty percent (50%) of the invoiced retail price for hardcover and trade paperback editions and at discounts of more than sixty percent (60%) of the invoiced retail price for mass market paperback editions, a royalty of ten percent (10%) of the net amount that the Publisher receives;

Notwithstanding the foregoing, should the Publisher's retail and whole-sale trade discount policies ever exceed fifty percent (50%) of the invoiced retail price for hardcover and trade paperback editions and sixty percent (60%) of the invoiced retail price for mass market paperback editions, the full regular royalty rate would apply on all domestic sales governed by such policies.

*Cheap Hardcover*
*Edition*

(e) On copies sold of any cheap hardcover edition which Publisher publishes at a price not more than two-thirds of the suggested retail price, a royalty of ten percent of the net amount Publisher receives. If the Work is published in a single combined ("omnibus") edition with other works by the Author, Publisher shall pay Author a pro-rata share of the applicable royalties as set forth in this paragraph based on the proportion the Work comprises of such omnibus edition.

*Sales from Later*
*Small Editions*

(f) On copies sold from a reprinting of three thousand (3,000) or fewer hardcover copies or trade paperback copies or five thousand (5,000) or fewer mass market paperbound copies made two years or more after first publication of the Work, it being understood that such reprintings will not be made more than once a year: one-half of the prevailing royalty rate then in effect; this reduced royalty is provided because of the increased cost of manufacture of small reprintings, to enable the Author and the Publisher to keep the Work in print and in circulation as long as possible; and may be terminated upon six (6) months notice from Author.

*Nonroyalty*

(g) On copies furnished gratis to the Author, or for review, advertising, sample, or like purposes, or on copies destroyed by fire or water or other means, or on copies sold at or below cost, no royalty shall be paid.

*Author's Copies*

9. The Author shall have the right to purchase copies for personal use, but not for resale, at forty percent (40%) discount. Such purchases shall be paid for within thirty (30) days of the date of the Publisher's invoice.

Should the Publisher decide to remainder the balance of its inventory of the Work, it shall first offer copies to the Author at the manufacturing cost of the last printing, and the Author shall have two weeks to respond to this offer.

*Audio-Visual*

10. The Publisher shall have the right in the English language (to be exclusive or nonexclusive as specified in the grant of territory in Clause 1), to produce, manufacture, sell, distribute, exhibit, and transmit derivative versions of the Work in any audio form provided it is a single voice, non-dramatic reading of the text and/or visual form provided it is a non-dramatic, non-illustrative, non-animated display of the text only, including, without limitation, film strips, phonograph records, tapes, telecartridges, computer software, and other information and storage retrieval systems:

a royalty to be mutually agreed in good faith between Publisher and Author referencing to standard industry rates;

EXCEPT with respect to the audio versions of TRAVELS WITH CHARLEY and THE PEARL the royalty with respect to each such audio version shall be 8 percent of Publisher's net receipts for the first 10,000 units sold and 10 percent of Publisher's net receipts for all copies sold in excess of 10,000 units.

Publisher acknowledges that specifically excluded from the audiorecording rights granted herein is the right to distribute the audiorecordings in the mail-order rental market, such rights having already been granted by Author to Books on Tape and with respect to CANNERY ROW and SWEET THURSDAY to Recorded Books, but shall not be otherwise restricted except that both the Publisher and Books on Tape and Recorded Books shall have the nonexclusive right to distribute the audio recordings in the library and specialty markets.

Publisher's exercise of these rights will in no way conflict with Author's exercise of television/motion picture rights.

Elaine Steinbeck shall have prior approval of the script and the artwork and packaging of any audio visual versions of the Work.

*Subsidiary Rights*

11. The Publisher shall also have the following rights in the English language (to be exclusive or nonexclusive as specified in the territorial grant in Clause 1), with respect to which the Publisher alone may make arrangements with third parties on the Publisher's own behalf, or on behalf of the Author when necessary, and the division of the Publisher's net receipts from the sale or other disposition of these rights shall be as follows:

All subsidiary rights licenses, with the exception of excerpts or digests in anthologies or other volumes pursuant to Clause 11 (d), shall be subject to the Author's approval, such approval not to be unreasonably withheld. Failure of Author/Agent to reply with any objections within ten business days of Publisher's inquiry shall be deemed as Author approval. See 11 (a) with respect to licensing of paperback rights.

*Reprint*

(a) Paperbound* hardcover, or large-type reprint publication: fifty percent (50%) of said receipts to the Author and fifty percent (50%) to the Publisher;

* Paperbound licenses to a third party shall be subject to the approval of the Author, or his agent acting on Author's behalf, such approval not to be unreasonably withheld, except (i) withholding of approval cannot be used to veto one Penguin USA paperback imprint from acquiring rights in a competitive situation where such imprint is acting as a third party and (b) in the event there is a proposed licensing to a third party which is disapproved by the Author, or his agent acting on Author's behalf, thereby putting the Work out of print and rights subsequently revert to the Author pursuant to the provisions of Clause 8A, the Author and/or his agent cannot license paperback rights to that party within twelve months of Author's, or his agent acting on Author's behalf, disapproval of Publisher's proposed license.

*Book Club*

(b) Book-club publication: fifty percent (50%) of said receipts to the Author and fifty percent (50%) to the Publisher;

*First Serial*

(c) DELETED

*Second Serial,*
*Anthology, etc.*

(d) Periodical publication, including without limitation  magazine, newspaper, and digest after book publication, reprinting in whole or in part or excerpts or digests (but not abridgemnts which are prohibited) in anthologies or other volumes, pamphlets, etc., and public readings: fifty percent (50%) of said receipts to the Author and fifty percent (50%) to the Publisher;

*Audio-Visual*

(e) Reproduction of the text  or any adaptation of the work, or any derivative versions thereof, in any audio form provided it is a single voice, non-dramatic reading of the text and/or visual form provided it is a non-dramatic, non-illustrative, non-animated display of the text only (other than by motion picture, radio or television, or in storage and retrieval systems), including without limitation film strips, phonograph records, telecartridges and tapes: seventy five percent (75%) of said receipts to the Author and twenty five percent (25%) to the Publisher; No performance rights are granted in connection with such rights.

Publisher acknowledges that specifically excluded from the audiorecording rights granted herein is the right to distribute the audiorecordings in the mail-order rental market, such rights having already been granted by Author to Books on Tape and with respect to CANNERY ROW and SWEET THURSDAY to Recorded Books, but shall not be otherwise restricted except that both the Publisher and Books on Tape and Recorded Books shall have the nonexclusive right to distribute the audio recordings in the library and specialty markets.

Elaine Steinbeck shall have prior approval of the script and artwork and packaging of any audio visual version of the Work.

Radio and
Television

        (f)  DELETED

Motion Picture
and Dramatic

        (g)  DELETED

In the event of the disposition of performance rights, the Publisher agrees to grant to the purchaser the privilege to publish excerpts and summaries of the Work or of any motion picture, dramatic, or television version of the Work, in the aggregate not to exceed ten percent (10%) of the text (but not more than 7,500 words), for advertising and exploiting such rights, provided that all steps necessary to protect the copyright of the Work are taken and that the Publisher is credited as the publisher of the Work.

Data Storage
and Retrieval

        (h)  Use of the text only in non-dramatic, non-illustrative, non-animated display through computer software and in other information storage and retrieval systems, whether through computer, mechanical, or other electronic means now known or hereafter invented and ephemeral screen-flashing or reproduction thereof, whether by printout, photo-reproduction or photocopy, including without limitation punch cards, microfilm, magnetic tapes, or like processes attaining similar results: seventy five percent (75%) of receipts to the Author and twenty five percent (25%) to the Publisher;

Elaine Steinbeck shall have prior approval of the script and artwork and packaging of any versions of the Work for data storage and retrieval.

Commercial Use

        (i)  DELETED

Use by the
Handicapped

        (j)  Publication or transcription  of the Work in whole or in part without charge in braille, tapes, or other forms for use by the physically handicapped: none.

Editions in
English Abroad

        12. DELETED

Translation

        13. DELETED

Rights Reserved
by Author

        14. All rights not specifically granted to the Publisher under this agreement are reserved by the Author.

ʷᵒⁿᵉity

        15. DELETED

*Space*
*Advertising*

16. Commercial advertisements (other than a list of other works published by the Publisher or its licensees) may not be inserted or printed in any edition of the Work without the Author's prior written consent.

*Accounting and*
*Payment*

17. The Publisher agrees to render semiannual statements of accounts on a work-by-work basis on the hardcover edition to April 30 and October 31 of each year, on or before August 31 and February 28 following, and statements of account on the paperbound edition published by the Publisher shall be rendered to June 30 and December 31 of each year, on or before October 31 and April 30 following, and the Publisher agrees to accompany such statements with checks in payment of the amounts due thereon. In making accountings, Publisher shall have the right to allow for a reasonable reserve against returns to be defined as a reserve sufficient in light of the actual return percentage in the sale of the Work and to be adjusted accordingly in each accounting period. After two years following the publication date regular royalty statements and payments need not be issued by the Publisher until accumulated earnings from all sources, due and payable, exceed $10.00, unless requested in writing by the Author. Should the Author receive an overpayment, the Author agrees that the Publisher may deduct such amount from any further earnings of the Work, it being understood that an unearned advance is not an "overpayment."

Works #1 - #18 will be jointly accounted and no sums, other than the yearly guarantees due pursuant to Clause 7, will be paid to the Author until the total amount (cumulative from the first payment) paid in guarantees to the Author has been earned from all sums accruing to the Author hereunder on Works #1 - #18 at the end of each royalty period.

Notwithstanding anything herein to the contrary, Publisher shall provide a separate semiannual statement and payment to Author for A RUSSIAN JOURNAL with the semiannual statements and payments provided with the other Works, which payment shall be deducted from the guaranteed advance payment provided in paragraph 7.

The Author may, upon written request, examine or cause to be examined through certified public accountants the Publisher's books of account insofar as they relate to the sale or licensing of the Work, provided such examinations are limited to one per year and take place during regular business hours. Such examination shall be at the Author's expense, unless errors of accounting amounting to more than five percent (5%) of the total sums accrued to the Author shall be found to the Author's disadvantage, in which case the reasonable cost of the examination shall be borne by the Publisher, and payment of the amount due shall be made within thirty (30) days thereafter.

*Option on Other*
*Work*

18. DELETED

*Termination of*
*Previous Agreements*

19.  This agreement, when signed by Author and Publisher, will cancel and supercede the previous agreements, as amended, for the Works #1 - #18 covered hereunder.

20.  Inasmuch as this agreement does not include all the contents of Work #17 and Work #18, fifty percent of the royalty specified for Work #17, THE SHORT NOVELS OF JOHN STEINBECK, and twenty five percent of the royalty specified for Work #18, THE PORTABLE STEINBECK, will be due the Author hereunder.

PART TWO

*Author's*
*Guarantee*

1A. The Author represents and warrants that John Steinbeck is the sole author of the Work; that the Author is the sole owner of all rights granted hereunder; that the Author has not sold, licensed, assigned, or otherwise encumbered, and will not sell, license, assign, or otherwise encumber, any of such rights; that the Author has full power to enter into and to perform this agreement; that, except for any material expressly permitted or cleared pursuant to Clause 3 of Part One, the Work is original, and is not in the public domain; that the Work in no way violates any copyright or proprietary or contract or personal right of others, and that it contains nothing unlawful, libelous, or obscene. In the event of any claim, action, or proceeding based upon an alleged violation of any of these warranties, (a) the Publisher shall have the right to defend the same through counsel of its own choosing; (b) the Author shall hold harmless the Publisher, any seller of the Work, any licensee of a subsidiary right in the Work, and any other person to whom the Publisher or its licensees may extend the representations and warranties contained herein in connection with the production or distribution of the Work or the exercise of any rights therein or derived therefrom, against any damages and expenses (including reasonable legal fees and expenses) arising from the breach or alleged breach of any of the foregoing warranties. If any such claim, action, or proceeding is instituted, the Publisher shall promptly notify the Author, who shall fully cooperate in the defense thereof, and the Publisher may withhold payments of reasonable amounts due the Author under this agreement between the parties. These warranties and indemnities shall survive the termination of this agreement.

Publisher agrees to designate Author as to the Work as an additional insured in any Errors and Omissions insurance policy which Publisher may purchase at its expense covering its book publishing activity and shall, except as limited hereinbelow, look solely to the proceeds of such insurance coverage for payment of any sums that may become due from Author by reason of the indemnification undertaken by the Author hereinabove regarding risks which are covered by Publisher's Errors and Omissions insurance policy except if the Author's breach of warranties set forth hereinabove is done wilfully. Author's obligation to indemnify Publisher shall be limited to thirty-seven thousand, five hundred dollars ($37,500) which sum is less than one-half (1/2) of the one hundred thousand dollar ($100,000) deductible presently in effect on the Errors and Omissions insurance policy. Notwithstanding the foregoing, Author acknowledges that the limits of liability may effectively be decreased or exhausted as a result of occurrences during a year related to other works and other additional insureds and that Author's liability to Publisher in excess of such coverage is not affected hereby. In consideration for the foregoing, Author agrees that they will fully cooperate with Publisher in the defense of any such claims, the Publisher and/or its insurer shall have the right to select counsel, and that Publisher shall have the right to settle any claim upon the terms and conditions it and/or its insurer deems satisfactory.

*Defense of
Copyright*

2A. In case of any infringement of the copyright of the Work by others, the Publisher may in its discretion sue or employ such remedies as it deems expedient, and all such suits or proceedings shall be at the joint expense of Author and Publisher, and the net proceeds of any recovery shall be divided equally between them, but the Author shall not be liable for any expenditure for such purposes in excess of one thousand dollars ($1,000.00) undertaken by the Publisher without the Author's previous consent in writing. If the Author does not consent to all expenditures for such purposes, any recovery shall be divided between the Publisher and the Author in the ratio of their respective expenditures for such purposes.

*Competitive
Material*

3A. DELETED

*Prior
Publication*

4A. DELETED

*Default by the
Publisher*

5A. If the Publisher should fail to pay undisputed monies due or to deliver statements as agreed (unless such failure is due to a good-faith dispute between the Author and the Publisher) within 60 days from the date of written demand by the Author or his/her representatives, this agreement shall be canceled and all rights in the Work granted herein shall revert to the Author forthwith and without further notice, and without prejudice to monies due to the Author from the Publisher.

*Author's
Property*

6A. DELETED

*Revised Edition*

7A. DELETED

*Termination of
this Agreement*

8A. Should the Publisher fail to keep in print any one of Works #1 through #18 or any of the other Steinbeck works which are the subject of a separate agreement with Elaine Steinbeck dated October 24, 1994 and after written demand from the Author decline or neglect to bring such Work back into print within one year, the Publisher's rights shall terminate hereunder as well as terminate for the other Steinbeck works which are the subject of a separate agreement with Elaine Steinbeck dated October 24, 1994, provided that all obligations of the Author to the Publisher have been met. Upon the effective date of termination, the Publisher shall have the right to dispose of any copies remaining on hand of the in print Works and any copies in process of the Works covered hereunder as well as any other in print or in process Steinbeck works which are the subject of a separate agreement with Elaine Steinbeck dated October 24, 1994 subject to the payment of royalties as provided hereunder and as provided in the agreement

with Elaine Steinbeck dated October 24, 1994. It is understood that any Work shall be considered to be in print if any hardcover or softcover publication rights granted hereunder are being exercised or are under contract to be exercised.

If, at any time after first publication, the Publisher wishes to discontinue publication for any reason of any Work which is the subject of this agreement or a separate agreement with Elaine Steinbeck dated October 24, 1994, the Publisher may do so upon written notice to the Author, in which event this agreement and the other agreement for the Steinbeck works dated October 24, 1994 with Elaine Steinbeck shall terminate and all rights granted hereunder shall revert to the Author upon the termination date set forth in such notice from the Publisher. If such termination occurs, the provisions of the immediately following paragraph of this Clause 8A shall apply.

For thirty (30) days after the date of such termination, the Author shall have the right, but not the obligation, to acquire from the Publisher (a) any printer's materials under the control of the Publisher, at the fair market value thereof; and/or (b) any inventory of the work under the control of the Publisher, at the manufacturing cost of last printing. If the Author does not exercise such right within such thirty (30) days, the Publisher may dispose of any such materials or inventory without any further obligation to the Author.

*Termination
Under U.S. Law*

9A. If Elaine Steinbeck and/or Thomas Steinbeck exercise their right to terminate grants made to Publisher in this agreement (in accordance with Section 304(c) of Title 17 of the U.S. Code) and if the Terminating party(ies) fail(s) to enter into an agreement with Publisher for Publisher to continue to publish the terminated work(s), then Publisher may take the following actions:

1. The amount by which the Guaranteed Advance Payments exceed royalties due and/or paid to all Authors from the date of this contract until the date a Notice of Termination is received by Publisher ("Excess Guaranteed Payments") shall be calculated on a work-by-work basis (pro-rated in proportion to the royalties generated by each work during the period). The amount of the Excess Guaranteed Payment attributable to the terminated work (even if received by other than the terminating party) shall be, at Publisher's option, recoverable by Publisher from any royalties and/or further Guaranteed Advance Payments owed to the terminating party or parties (as pro-rated) from that date forward, on account of the terminating party(ies)'s interest in the terminated work (if any) during the period between notice of termination and recapture and/or on account of the terminating party(ies)'s pro-rata interest in any non-terminated works that are the subject of this agreement.

2. In addition to the right to recapture the excess over earnings on Guaranteed Advances as provided above, in the event the terminating party(ies) wish to transfer the recaptured rights to a third party, they shall first offer them to Publisher in the following manner:
(i) If terminating party(ies) decide(s) to accept a bona fide offer with respect to all or part of the terminated work(s) then in each such instance terminating party(ies) shall, promptly after deciding to accept such offer, give Publisher written notice specifying such terms and conditions which terminating party(ies) is(are) prepared to accept and the name(s) of the third party who made the offer to terminating party(ies). At any time within fifteen (15) days after receipt of such written notice from terminating party(ies), Publisher may notify terminating party(ies) in writing of its acceptance of such offer and, in such event, the rights referred to in such offer shall be assigned to Publisher,

subject to Publisher's compliance with the terms of the offer so accepted. If Publisher shall acquire from terminating party(ies) all or part of the terminated work(s), then both parties agree to enter into a written agreement with respect thereto.

(ii)  If Publisher shall elect not to purchase the terminated work(s), the terminating party(ies) may dispose of said terminated work(s) but only to the offerer and upon the terms and conditions specified in such notice, it being understood and agreed that terminating party(ies) may not dispose of such rights to any other party or upon terms and conditions any different from those offered to Publisher hereunder without again offering such terminated work(s) to Publisher as herein provided.

*Bankruptcy and Liquidation*

10A. In the event that the Publisher shall be adjudicated a bankrupt, a receiver or a trustee shall be appointed for all or substantially all of the Publisher's property, and the order appointing the receiver or trustee shall not have been vacated within sixty (60) days from its entry, or if the Publisher shall seek to take advantage of any so-called insolvency law, all rights hereby granted to the Publisher shall forthwith revert to the Author, and this agreement shall thereupon terminate.

*Governing Law*

11A. This agreement shall be interpreted under the laws of the State of New York applicable to contracts entirely made and performed therein. Any dispute between the Author and the Publisher relating to this agreement and/or the Work, if it cannot be settled by mutual agreement between the Author and the Publisher, shall be submitted solely to the Federal or State courts sitting in New York City, or courts with appellate jurisdiction therefrom, and the Author and the Publisher both consent to the jurisdiction and venue of such courts for such purpose.

*Complete Agreement*

12A. This agreement constitutes the complete understanding of the parties, and no waivers or modifications of any provision shall be valid unless in writing, signed by the Author and the Publisher. The waiver of a breach or of a default under any provision hereof shall not be deemed a waiver of any subsequent breach or default. The payment of any advances or royalties hereunder shall not be deemed a waiver by the Publisher of any rights and/or claims that it may have with respect to nonperformance by the Author of the Author's obligations hereunder.

*Assignment*

13A. This agreement shall be binding upon the heirs, executors, or administrators of the Author, and upon the successors and assigns of the Publisher. The Author shall not assign this agreement, or obligations hereunder, without the prior written consent of the Publisher. The Publisher shall have the right on notice to Author to assign this agreement, or its rights and obligations hereunder, only to a company acquiring all or substantially all of the Publisher's assets. The Author shall have the right to assign any amounts due hereunder to the extent such amounts become due after the Publisher has received written notice from the Author of such assignment.

*Agency
Clause*

14A. All sums of money due under this agreement shall be paid to the Author's agent, McIntosh & Otis, Inc., 310 Madison Avenue, New York, New York 10017 and the receipt of the said McIntosh & Otis, Inc. shall be a good and valid discharge of all such indebtedness; and the said McIntosh & Otis, Inc. is hereby empowered by the Author to act in all matters arising from and pertaining to this agreement.

The Author does hereby irrevocably assign and transfer to McIntosh & Otis, Inc. and McIntosh & Otis, Inc. shall retain a sum equal to ten percent (10%) out of all monies due and payable to and for the account of the Author under this agreement.

IN WITNESS WHEREOF the parties hereto have hereunto set their hands and seals the day and year first above written.

IN THE PRESENCE OF:

_____ Witness

ELAINE STEINBECK

_Elaine C. Steinbeck_

THOMAS STEINBECK

_Elaine Steinbeck P/o_

_____ Witness

Elaine Steinbeck as Attorney-in fact for Thomas Steinbeck

VIKING PENGUIN

_____ Witness

Barbara Grossman
Senior Vice President
Publisher, Viking

ALAN J. KAUFMAN
Senior Vice President & General Counsel